# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| WAYNE HANK<br>2365 Hillcrest Road<br>Quakertown, PA 18951<br><br>   Plaintiff,<br>v.<br><br>ENERGY TRANSFER PARTNERS, LLC<br>3807 West Chester Pike<br>Newtown Square, PA 19073<br>  and<br>ENERGY TRANSFER, L.P., d/b/a<br>ENERGY TRANSFER<br>8111 Westchester Drive<br>Dallas, TX 75225<br>  and<br>SUNOCO LOGISTICS PARTNERS, L.P.<br>3807 West Chester Pike<br>Newtown Square, PA 19073<br><br>   Defendants. | CIVIL ACTION<br><br>No.: _____<br><br><br><br><br><br>**JURY TRIAL DEMANDED** |

## CIVIL ACTION COMPLAINT

Plaintiff, Wayne Hank, by and through his undersigned counsel, hereby avers as follows:

### I. INTRODUCTION

1. Plaintiff has initiated this action to redress violations by Energy Transfer Partners, LLC, Energy Transfer, L.P., and Sunoco Logistics Partners, L.P. of the American's with Disabilities Act ("ADA" – 42 U.S.C. §§ 12101 *et. seq.*) and the Family and Medical Leave Act ("FMLA" – 29 U.S.C. §§ 2601, *et. seq.*). In particular, Plaintiff alleges that he was wrongfully terminated by Defendants (among other claims).[1]

---

[1] Plaintiff will seek leave to amend the instant lawsuit to add claims under the Pennsylvania Human Relations Act ("PHRA") once properly administratively exhausted. Plaintiff was however required to initiate this lawsuit pursuant to a right-to-sue letter prior to such PHRA exhaustion. Plaintiff's PHRA claims will mirror identically his ADA claims, and they are analyzed identically in the Third Circuit as well.

## II. JURISDICTION AND VENUE

2. This Court, in accordance with 28 U.S.C. § 1331, has jurisdiction over Plaintiff's claims because this civil action arises under laws of the United States.

3. This Court may properly maintain personal jurisdiction over Defendants because Defendants' contacts with this state and this judicial district are sufficient for the exercise of jurisdiction over Defendants to comply with traditional notions of fair play and substantial justice, satisfying the standard set forth by the United States Supreme Court in International Shoe Co. v. Washington, 326 U.S. 310 (1945) and its progeny.

4. Pursuant to 28 U.S.C. § 1391(b)(1) and (b)(2), venue is properly laid in this district because all of the acts and/or omissions giving rise to the claims set forth herein occurred in this judicial district, and in addition, Defendants are deemed to reside where they are subject to personal jurisdiction, rendering Defendants residents of the Eastern District of Pennsylvania.

5. Plaintiff is proceeding herein under ADA and has properly exhausted his administrative remedies with respect to such claims by timely filing a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC") and by filing the instant lawsuit within ninety (90) days of receiving a notice of dismissal and/or right to sue letter from the EEOC.

## III. PARTIES

6. The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

7. Plaintiff is an adult individual, with an address as set forth in the caption.

8. Plaintiff was hired in 2016 by Sunoco Logistics Partners, L.P. (hereinafter "Defendant SLP" if referred to individually). This entity was Plaintiff's direct employer where Plaintiff was physically employed in Quakertown, Pennsylvania.

9. Following Plaintiff's hire with and by Defendant SLP, Defendant SLP engaged in a business transaction wherein its name was changed to Energy Transfer Partners, LLC (hereinafter "Defendant ETP" if referred to individually). Thereafter, Plaintiff's pay records and income-tax related documentation were changed by Defendants to reflect that he was an employee of Defendant ETP.

10. And between 2018-2019, Defendants SLP and ETP began operating under the changed corporate name of Energy Transfer, L.P. (hereinafter "Defendant E-Transfer" if referred to individually).

11. Plaintiff was thus employed by all 3 aforesaid captioned and named Defendants who operated the physical location wherein Plaintiff was deemed based (in Newtown Square, Pennsylvania). They were collectively Plaintiff's single, joint and/or integrated employer(s) for the purposes of this lawsuit.

12. In light of these entities utilizing the same management, operations, resources, and being headquartered in Texas, they are each properly named in this lawsuit as a functional employer of Plaintiff (and they appear to still be existing registered corporations notwithstanding multiple name alterations, mergers or other forms of business transactions). *These entities are hereinafter collectively referred to as "Defendants."*

13. At all times relevant herein, Defendants acted by and through their agents, servants and employees, each of whom acted at all times relevant herein in the course and scope of their employment with and for Defendants.

## IV.     FACTUAL BACKGROUND

14.    The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

15.    Plaintiff is a 61-year-old male.

16.    Plaintiff was hired by Defendants on or about August 26, 2016, and he worked for Defendants as a Senior Specialist – IT Applications.

17.    Plaintiff was considered to physically work for Defendants at 3807 West Chester Pike, Newtown Square, Pennsylvania 19073.

18.    Plaintiff's job as a Senior Specialize – IT Applications, consisted of him providing remote IT support to terminals of Defendant in many states throughout the United States. Plaintiff did so from his company-provided laptop and his company-provided phone.

19.    In total, Plaintiff was employed with Defendants for a little more than 2 years until being terminated in November of 2018.

20.    Plaintiff was an otherwise exemplary employee from hire until May of 2018 (his first approximate 20 months of employment). Plaintiff thereafter did not have the opportunity to be exemplary, as he took a medical leave and was terminated without accommodation (as explained *infra*).

21.    As of in about May of 2018, Plaintiff had been diagnosed with and treating for Leukemia. Leukemia is cancer of the body's blood-forming tissues, including the bone marrow and the lymphatic system. Plaintiff's chronic disability limited his bodily functions and many other life activities, a disability that Plaintiff will treat for the rest of his life.[2]

---

[2] There can be no reasonable question that Plaintiff meets all requisite criteria to be disabled under the ADA. *See* 42 U.S.C. § 12102 (an individual is disabled when limited in "major bodily functions" such as "functions of the immune system, normal cell growth," and other bodily functions; *see also Fredricksen v. UPS*, 2006 U.S. Dist. LEXIS 76121 (N.D. Ill. 2006)(this Court "accepts" that Leukemia is a protected disability under the ADA); *Davis v.*

4

22. In or about mid-May of 2018, Plaintiff commenced a medical leave of absence to treat for his serious health condition(s) and aforesaid disability.

23. Plaintiff kept Defendants apprised of his treatment regimen and need for ongoing medical leave, providing updated medical information when necessary or requested.

24. Defendants, by and through their subsidiaries, employ "over 8,000 employees"[3] and Plaintiff was *one of several* employees performing his type of role for and on behalf of Defendants. It was not in any manner an undue burden upon Defendants to hold Plaintiff's position open for an extended period of time in light of his position redundancy.

25. Plaintiff was specifically informed by Defendants during his medical leave of absence, *in writing* by and through correspondence from Defendants' Senior Director of Benefits (Lynda Cook) that:

> [Defendants] leave policy generally limits the period of employment for employees who are on an approved leave of absence, including medical leaves of absence, to generally no more than six (6) months. If an employee is unable or unwilling to return to work within six (6) months of commencing leave . . . the employee's employment will be terminated. If you do want to explore the possibility of returning to work or whether [Defendants] can reasonably accommodate an extension of your leave beyond six (6) months, please contact me . . . as soon as possible.

26. As discussed *infra*, Plaintiff was in fact able to return to work *within* the approximate 6-month leave policy permitting job retention within Defendants (even without the need to accommodate him further). However, Plaintiff had indicated in responsive correspondence (dated 9/19/18) to Cook that: (a) his cancer ("is an ADAA-protected disability);

---

*Con-Way Freight Inc.*, 139 F. Supp. 3d 1224 (D. Or. 2015)(this court "assumes" Leukemia is a disability under the ADA).

[3] This quote is taken verbatim from Defendants' own representations to the Equal Employment Opportunity Commission ("EEOC") in their Position Statement, at p. 2, ¶ 1.

5

(b) he "received a bone marrow transplant" on August 24, 2018; (c) he has "a strong desire to return to work;" and (d) he wanted to be considered for a potential "extension" of medical leave beyond 6 months due a number of specified medical complications.

27. The crux of the response Plaintiff received from Cook by correspondence (dated 9/20/18) was: (a) "you still have approximately 7 weeks of approved Family Medical Leave;" and (b) "closer to the end of your Family Medical Leave," "we can assess . . . whether any accommodations or extensions are necessary and/or available."

28. On or about October 31, 2018, Plaintiff provided a medical release to resume working to Defendants' Director of Benefits (Cook) and also to his new manager, Cheryl Reabe.[4] Plaintiff's attempt to return to work was within approximately 6 months of his policy-permitted 6-month medical leave.

29. In particular, Plaintiff's "Return to Work Release" identified he could resume working within Defendants on November 12, 2018, *subject to* certain accommodations being requested.

### (A) Plaintiff requested *very reasonable* accommodations from Defendants upon attempting resume working in November of 2018.

30. On October 31, 2018, Plaintiff requested the following accommodations upon attempting to return to work in November of 2018 (through his physicians return-to-work documentation):

> (A) To work initially "work from home," as he should "ease back into the work schedule;"
>
> (B) To be permitted to take limited time off from work when needed for "clinic visits "through the end of December [2018];"

---

[4] Reabe had become Plaintiff's immediate manager following the retirement of John Iannacone. Iannacone was Defendants' Director of IT Applications. Iannocone retired from Defendants in or about October of 2018, very shortly before Plaintiff attempted to return to work with Defendants from his medical leave.

6

(C) To "not be assigned on-call hours until at least March 31, 2019;" and

(D) "These dates are estimates and could change."

31. Generally speaking, working from home can be a very reasonable accommodation. Indeed, Defendants represented to the EEOC (a federal agency) via its Position Statement in this case (at p. 2) *that an employee needing to work from home may be* a reasonable accommodation. *See also e.g. Mosby-Meachem v. Memphis Light,* Gas & Water Div., 883 F.3d 595 (6th Cir. 2018)(affirming jury verdict for Plaintiff when employer failed to engage in interactive process <u>and</u> jury concluded essential functions could be performed from employee's home).

### (B) <u>Defendants did not ask Plaintiff a single question, did not talk with Plaintiff, did not consult his physician(s), did not pose a single medical question, and terminated Plaintiff without even feigning an "interactive process."</u>

32. After being provide with Plaintiff's return-to-work medical documentation and requested accommodations as of October 31, 2018, not a single supervisor, human resources person or benefits person ever contacted Plaintiff until advising Plaintiff of his termination from employment.

33. Plaintiff was contacted by Cook on or about November 9, 2018 and informed he was terminated from Defendants.

34. From October 31, 2018 (request for reinstatement and for medical accommodations) *through* November 9, 2018 (termination notification), Plaintiff **was never** asked a single question by any employee of Defendants, nobody talked with Plaintiff from Defendants, no medical information was sought from him, and he was terminated **without any** attempted interactive dialogue from Defendants **at all**.

> **(C) Plaintiff's requested accommodations were easy to accommodate, did not create an undue burden upon Defendants, and Defendants point-blank provided false information to the Equal Employment Opportunity Commission ("EEOC") in responding to Plaintiff's discrimination and retaliation Charge.**

35. Defendants *falsely* represented to the EEOC, a federal agency, that they complied with the ADA *by having an "interactive process"* in talking about Plaintiff amongst their own management after he requested medical accommodations and prior to communicating Plaintiff's termination from employment.[5] In fact, Defendants engaged in **no** interactive process.[6]

36. Because Defendants **never** engaged in any good-faith or an attempted interactive process, Defendants **also falsely** represented to the EEOC Plaintiff's accommodations couldn't be accommodated anyway.

37. Defendant represented (via Position Statement, at p. 2, to the EEOC) that Plaintiff's accommodation to work from home was undue because of the "expectation" that "every employee will report to and work from his or her assigned work station." **But**:

> (A) Plaintiff had worked remotely or from his residence many times in his career for Defendants;
>
> (B) The IT support Plaintiff provided was for terminals in **many** states, *not at his physical office location*;
>
> (C) Plaintiff had an office area of his residence, had a company-issued laptop, and had full access to all databases and information no differently than if he were sitting in a chair at the office or in his residence;

---

[5] *See EEOC v. Aldi, Inc.*, 2008 U.S. Dist. LEXIS 25206 * 40 (W.D. Pa. 2008)(an "interactive process" must be "*between the employer and employee*" and "initiated by the employer," denying summary judgment for an employer's complete failure to initiate any such dialogue). (Emphasis added).

[6] These false representations were made to the EEOC via a Position Statement of Defendants. *See e.g. Reaves v. Pa. State Police*, 2013 U.S. Dist. LEXIS 137948, *7 (M.D. Pa. 2013)(outlining that it is well established in the Third Circuit that Position Statements of employers to the EEOC are admissible as admissions of a party in any litigation or for impeachment).

8

    (D) Even in the past when Plaintiff worked from his residence, pre-accommodation request(s), Plaintiff had all work-related calls forwarded without incident to his company-issued cellular phone and without any delay; and

    (E) Many similar IT people work remotely around the United States in all types of similar capacities or professions.

38. Defendant *falsely* represented (via Position Statement, at p. 5, to the EEOC) that Plaintiff was unable to work remotely from his residence because it was an "essential function" of Plaintiff's job that he be ready, "without notice, to visit a terminal location." **But**:

    (A) ***In 2 years*** of employment, Plaintiff ***was never once*** directed or called to provide ***in-person support*** to terminals in different states he supported remotely by way of software (let alone "without notice");

    (B) Plaintiff supported approximately 42 terminals in totally different states remotely; and

    (C) And to the extent that help-desk, or question and answer was insufficient by way of support, Plaintiff was able to physically access the software remotely and operate or repair the system remotely (logging in as if he were the user in a different state).

39. Defendants ***misrepresentations*** to a federal agency that Plaintiff had to "without notice" visit remote locations despite never having done so in his entire employment for years was an utter fabrication *and clear example of its failure to engage in an interactive process.*

40. Defendants **falsely** represented (via Position Statement, at p. 6, to the EEOC) that Plaintiff's inability to work on-call from mid-November 2018 to March of 2019 would have posed an undue hardship because Defendants "could not eliminate on-call rotation" as an essential function of Plaintiff's job. **But**:

    (A) Plaintiff's normal work schedule was around 6:30 AM – 3:30 PM (subject to some fluctuation);

    (B) In Plaintiff's job position, he was generally to provide 24/7 on-call service as needed ***only 1 week out of the month*** rotating with 3 other people in his same job position also based in Plaintiff's location;

9

(C) Plaintiff only needed the accommodation of no on-call work because sleep was necessary *in late hours and early morning* to rehabilitate his immune system;

(D) Defendants had no alleged "disruption" or inability to accommodate on-call work when Plaintiff was on a 6-month medical leave (as it was *easy for each of 3 current similarly-situated employees to be on call one extra week every 3 months*);

(E) Plaintiff's inability to work on-call would have only been *for a total of roughly 3 weeks* because he only had on-call 1 week of each month for the accommodation period, *but Defendants exaggerated* the implications of undue hardship until March to the EEOC;

(F) On of the employees hired to replace Plaintiff was not even scheduled to work on-call for a prolonged period of time to learn the job despite it supposedly being an "essential function;" and

(G) Had Defendants even attempted an interactive process, they would have learned that Plaintiff *would have been willing* to work on-call from 3:30 PM until the evening in any of the weeks throughout the month, essentially making up his full on-call commitment for the limited time he needed to be accommodated.

### (D) <u>Had Defendants engaged in any attempted interactive process with Plaintiff, they would have also realized Plaintiff and his physician were prepared to be flexible with accommodation needs</u>.

41. Plaintiff requested accommodations in late October 2018 in conjunction with his attempt to return to work and medical clearance. Plaintiff was then terminated roughly 2 weeks later **with no response or discussion** about his requested accommodations.

42. Had Defendants not raced to terminate Plaintiff without any feigned or attempted interactive dialogue, Defendants would have understood that – even though Plaintiff's requested accommodations were actually reasonable – Plaintiff was prepared to modify his accommodations to suit Defendants' needs.

43. By way of examples, Plaintiff would have obtained medical clearance to work partially from the office, to get clearance to assist with on-call work until medically-necessary

10

sleep times for Plaintiff, to take a longer medical leave, or to adjust other requested accommodations.

44. Plaintiff could work within Defendants *provided that* he was given very reasonable accommodations. As a result of Plaintiff's termination from employment though, Plaintiff was precluded from a broad class of jobs due to his disabilities and thus continued to receive long-term disability compensation. But Plaintiff could have 100% performed all essential functions of the job he held with Defendants *had he been reasonably accommodated.*

### First Cause of Action
### Violations of the Americans with Disabilities Act, as amended ("ADA")
### ([1] Discrimination & [2] Retaliation)

45. The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

46. Plaintiff suffered from legally-protected disabilities, and Defendants violated the ADA, as amended, by: (1) not accommodating Plaintiff; (2) not engaging in an interactive process; (3) terminating because of his actual, perceived, and/or record-of disabilities; and (4) by engaging in unlawful retaliation by taking the aforesaid actions on account of Plaintiff's protected activities (namely expressing his ADA protections and requesting reasonable accommodations).

47. These actions as aforesaid constitute violations of the ADA, as amended.

### Second Cause of Action
### Violations of the Family and Medical Leave Act ("FMLA")
### (Interference & Retaliation)

48. The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

49. Plaintiff was an eligible employee under the definitional terms of the FMLA, 29 U.S.C. § 2611(a)(i)(ii).

50. Plaintiff utilized an accumulation of vacation, work leave, and other benefits in 2018 while treating for Leukemia. It appears thereafter, Defendants considered Plaintiff to be on Family and Medical Leave (FMLA") until November 2018.

51. Defendants **expressly** represented to Plaintiff that his "Family and Medical Leave" ended in November of 2018. These representations were made to Plaintiff in writing by letter from Defendants' Director of Benefits overseeing administration of such leave.

52. Plaintiff was able to perform all essential functions of his job when attempting to return from what Defendants expressly referred to his Family and Medical Leave. But Defendants violated the FMLA by: (1) not reinstating Plaintiff; (2) refusing to communicate with Plaintiff about his medical conditions or anticipated return; and (3) by retaliating against Plaintiff by not reinstating him to an available position because he exercised his FMLA entitlements and/or utilized FMLA leave.

53. These actions as aforesaid constitute both interference and retaliation violations of the FMLA.

**WHEREFORE**, Plaintiff prays that this Court enter an Order providing that:

A. Defendants are to promulgate and adhere to a policy prohibiting discrimination / retaliation in the future against any employee(s);

B. Defendant are to compensate Plaintiff, reimburse Plaintiff, and make Plaintiff whole for any and all pay and benefits Plaintiff would have received had it not been for Defendants' illegal actions, including but not limited to back pay, front pay, salary, pay increases, bonuses, insurance, and benefits.

C.  Plaintiff is to be awarded actual damages, as well as damages for the pain, suffering, and humiliation caused by Defendant's actions;

D.  Plaintiff is to be awarded liquidated and punitive damages as permitted by applicable laws herein;

E.  Plaintiff is to be accorded other equitable and legal relief as the Court deems just, proper, and appropriate; and

F.  Plaintiff is to be awarded the costs and expenses of this action and a reasonable attorney's fees as provided by applicable federal and state law.

Respectfully submitted,

**KARPF, KARPF & CERUTTI, P.C.**

By: _____
Ari R. Karpf, Esq.
3331 Street Rd.
Bldg. 2, Ste. 128
Bensalem, PA 19020

Date: October 30, 2019

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

### CASE MANAGEMENT TRACK DESIGNATION FORM

Wayne Hank                                              : CIVIL ACTION
:
v.                                                      :
:
Energy Transfer Partners, LLC, et al.                   : NO.

In accordance with the Civil Justice Expense and Delay Reduction Plan of this court, counsel for plaintiff shall complete a Case Management Track Designation Form in all civil cases at the time of filing the complaint and serve a copy on all defendants. (See § 1:03 of the plan set forth on the reverse side of this form.) In the event that a defendant does not agree with the plaintiff regarding said designation, that defendant shall, with its first appearance, submit to the clerk of court and serve on the plaintiff and all other parties, a Case Management Track Designation Form specifying the track to which that defendant believes the case should be assigned.

### SELECT ONE OF THE FOLLOWING CASE MANAGEMENT TRACKS:

(a) Habeas Corpus – Cases brought under 28 U.S.C. § 2241 through § 2255.                                                ( )

(b) Social Security – Cases requesting review of a decision of the Secretary of Health
    and Human Services denying plaintiff Social Security Benefits.                                                       ( )

(c) Arbitration – Cases required to be designated for arbitration under Local Civil Rule 53.2.                           ( )

(d) Asbestos – Cases involving claims for personal injury or property damage from
    exposure to asbestos.                                                                                                 ( )

(e) Special Management – Cases that do not fall into tracks (a) through (d) that are
    commonly referred to as complex and that need special or intense management by
    the court. (See reverse side of this form for a detailed explanation of special
    management cases.)                                                                                                    ( )

(f) Standard Management – Cases that do not fall into any one of the other tracks.                                       (X)

| 10/30/2019 | _[signature]_ | Plaintiff |
|---|---|---|
| **Date** | **Attorney-at-law** | **Attorney for** |
| (215) 639-0801 | (215) 639-4970 | akarpf@karpf-law.com |
| **Telephone** | **FAX Number** | **E-Mail Address** |

(Civ. 660) 10/02

UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

**DESIGNATION FORM**
*(to be used by counsel or pro se plaintiff to indicate the category of the case for the purpose of assignment to the appropriate calendar)*

Address of Plaintiff: 2365 Hillcrest Road, Quakertown, PA 18951

Address of Defendant: 3807 West Chester Pike, Newtown Square, PA 19073; 8111 Westchester Drive, Dallas, TX 75225

Place of Accident, Incident or Transaction: Defendants place of business

---

**RELATED CASE, IF ANY:**

Case Number: _____   Judge: _____   Date Terminated: _____

Civil cases are deemed related when *Yes* is answered to any of the following questions:

1. Is this case related to property included in an earlier numbered suit pending or within one year previously terminated action in this court?   Yes [ ]   No [X]

2. Does this case involve the same issue of fact or grow out of the same transaction as a prior suit pending or within one year previously terminated action in this court?   Yes [ ]   No [X]

3. Does this case involve the validity or infringement of a patent already in suit or any earlier numbered case pending or within one year previously terminated action of this court?   Yes [ ]   No [X]

4. Is this case a second or successive habeas corpus, social security appeal, or pro se civil rights case filed by the same individual?   Yes [ ]   No [X]

I certify that, to my knowledge, the within case [ ] is / [X] is not related to any case now pending or within one year previously terminated action in this court except as noted above.

DATE: 10/30/2019   *Attorney-at-Law / Pro Se Plaintiff*   ARK2484 / 91538   *Attorney I.D. # (if applicable)*

---

**CIVIL:** (Place a √ in one category only)

A. *Federal Question Cases:*
1. [ ] Indemnity Contract, Marine Contract, and All Other Contracts
2. [ ] FELA
3. [ ] Jones Act-Personal Injury
4. [ ] Antitrust
5. [ ] Patent
6. [ ] Labor-Management Relations
7. [X] Civil Rights
8. [ ] Habeas Corpus
9. [ ] Securities Act(s) Cases
10. [ ] Social Security Review Cases
11. [ ] All other Federal Question Cases
    *(Please specify):* _____

B. *Diversity Jurisdiction Cases:*
1. [ ] Insurance Contract and Other Contracts
2. [ ] Airplane Personal Injury
3. [ ] Assault, Defamation
4. [ ] Marine Personal Injury
5. [ ] Motor Vehicle Personal Injury
6. [ ] Other Personal Injury *(Please specify):* _____
7. [ ] Products Liability
8. [ ] Products Liability – Asbestos
9. [ ] All other Diversity Cases
    *(Please specify):* _____

---

**ARBITRATION CERTIFICATION**
*(The effect of this certification is to remove the case from eligibility for arbitration.)*

I, Ari R. Karpf, counsel of record *or* pro se plaintiff, do hereby certify:

[X] Pursuant to Local Civil Rule 53.2, § 3(c)(2), that to the best of my knowledge and belief, the damages recoverable in this civil action case exceed the sum of $150,000.00 exclusive of interest and costs:

[ ] Relief other than monetary damages is sought.

DATE: 10/30/2019   *Attorney-at-Law / Pro Se Plaintiff*   ARK2484 / 91538   *Attorney I.D. # (if applicable)*

NOTE: A trial de novo will be a trial by jury only if there has been compliance with F.R.C.P. 38.

Civ. 609 (5/2018)

JS 44 (Rev. 06/17)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

## I. (a) PLAINTIFFS
HANK, WAYNE

**(b)** County of Residence of First Listed Plaintiff: Bucks
*(EXCEPT IN U.S. PLAINTIFF CASES)*

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*
Karpf, Karpf & Cerutti, P.C.; 3331 Street Road, Two Greenwood Square, Suite 128, Bensalem, PA 19020; (215) 639-0801; akarpf@karpf-law.com

## DEFENDANTS
ENERGY TRANSFER PARTNERS, LLC, ET AL.

County of Residence of First Listed Defendant: Delaware
*(IN U.S. PLAINTIFF CASES ONLY)*
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

Attorneys *(If Known)*

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

- 1 U.S. Government Plaintiff
- X 3 Federal Question *(U.S. Government Not a Party)*
- 2 U.S. Government Defendant
- 4 Diversity *(Indicate Citizenship of Parties in Item III)*

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff and One Box for Defendant)*
*(For Diversity Cases Only)*

|  | PTF | DEF |  | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | 1 | 1 | Incorporated or Principal Place of Business In This State | 4 | 4 |
| Citizen of Another State | 2 | 2 | Incorporated and Principal Place of Business In Another State | 5 | 5 |
| Citizen or Subject of a Foreign Country | 3 | 3 | Foreign Nation | 6 | 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 625 Drug Related Seizure of Property 21 USC 881 | 422 Appeal 28 USC 158 | ☐ 375 False Claims Act |
| ☐ 120 Marine | 310 Airplane | ☐ 365 Personal Injury - Product Liability | ☐ 690 Other | 423 Withdrawal 28 USC 157 | 376 Qui Tam (31 USC 3729(a)) |
| ☐ 130 Miller Act | 315 Airplane Product Liability | ☐ 367 Health Care/ Pharmaceutical Personal Injury Product Liability | | | ☐ 400 State Reapportionment |
| ☐ 140 Negotiable Instrument | 320 Assault, Libel & Slander | | | **PROPERTY RIGHTS** | ☐ 410 Antitrust |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | 330 Federal Employers' Liability | ☐ 368 Asbestos Personal Injury Product Liability | | ☐ 820 Copyrights | ☐ 430 Banks and Banking |
| ☐ 151 Medicare Act | 340 Marine | | | ☐ 830 Patent | ☐ 450 Commerce |
| ☐ 152 Recovery of Defaulted Student Loans (Excludes Veterans) | 345 Marine Product Liability | **PERSONAL PROPERTY** | **LABOR** | ☐ 835 Patent - Abbreviated New Drug Application | ☐ 460 Deportation |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | 350 Motor Vehicle | ☐ 370 Other Fraud | ☐ 710 Fair Labor Standards Act | ☐ 840 Trademark | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 160 Stockholders' Suits | 355 Motor Vehicle Product Liability | ☐ 371 Truth in Lending | | **SOCIAL SECURITY** | ☐ 480 Consumer Credit |
| ☐ 190 Other Contract | 360 Other Personal Injury | ☐ 380 Other Personal Property Damage | ☐ 720 Labor/Management Relations | 861 HIA (1395ff) | ☐ 490 Cable/Sat TV |
| ☐ 195 Contract Product Liability | 362 Personal Injury - Medical Malpractice | ☐ 385 Property Damage Product Liability | ☐ 740 Railway Labor Act | ☐ 862 Black Lung (923) | ☐ 850 Securities/Commodities/ Exchange |
| ☐ 196 Franchise | | | 751 Family and Medical Leave Act | 863 DIWC/DIWW (405(g)) | ☐ 890 Other Statutory Actions |
| | | | | ☐ 864 SSID Title XVI | ☐ 891 Agricultural Acts |
| | | | | 865 RSI (405(g)) | ☐ 893 Environmental Matters |
| | | | | | ☐ 895 Freedom of Information Act |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 790 Other Labor Litigation | **FEDERAL TAX SUITS** | ☐ 896 Arbitration |
| ☐ 210 Land Condemnation | ☐ 440 Other Civil Rights | **Habeas Corpus:** | ☐ 791 Employee Retirement Income Security Act | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 899 Administrative Procedure Act/Review or Appeal of Agency Decision |
| ☐ 220 Foreclosure | ☐ 441 Voting | ☐ 463 Alien Detainee | | ☐ 871 IRS—Third Party 26 USC 7609 | |
| ☐ 230 Rent Lease & Ejectment | ☐ 442 Employment | ☐ 510 Motions to Vacate Sentence | | | ☐ 950 Constitutionality of State Statutes |
| ☐ 240 Torts to Land | ☐ 443 Housing/ Accommodations | ☐ 530 General | | | |
| ☐ 245 Tort Product Liability | X 445 Amer. w/Disabilities - Employment | ☐ 535 Death Penalty | **IMMIGRATION** | | |
| ☐ 290 All Other Real Property | ☐ 446 Amer. w/Disabilities - Other | **Other:** | ☐ 462 Naturalization Application | | |
| | ☐ 448 Education | ☐ 540 Mandamus & Other ☐ 550 Civil Rights ☐ 555 Prison Condition ☐ 560 Civil Detainee - Conditions of Confinement | ☐ 465 Other Immigration Actions | | |

## V. ORIGIN *(Place an "X" in One Box Only)*

- X 1 Original Proceeding
- ☐ 2 Removed from State Court
- ☐ 3 Remanded from Appellate Court
- ☐ 4 Reinstated or Reopened
- ☐ 5 Transferred from Another District *(specify)*
- ☐ 6 Multidistrict Litigation - Transfer
- ☐ 8 Multidistrict Litigation - Direct File

## VI. CAUSE OF ACTION
Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
ADA (42USC12101); FMLA (29USC2601)

Brief description of cause:
Violations of the ADA and FMLA.

## VII. REQUESTED IN COMPLAINT:
☐ CHECK IF THIS IS A CLASS ACTION UNDER RULE 23, F.R.Cv.P.

**DEMAND $**

CHECK YES only if demanded in complaint:
**JURY DEMAND:** X Yes ☐ No

## VIII. RELATED CASE(S) IF ANY
*(See instructions):*
JUDGE _____  DOCKET NUMBER _____

DATE: 10/30/2019

SIGNATURE OF ATTORNEY OF RECORD

**FOR OFFICE USE ONLY**

RECEIPT #  AMOUNT  APPLYING IFP  JUDGE  MAG. JUDGE

[Print]  [Save As...]  [Reset]